
HMG/DB: USAO#2015R00585



# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. TDC 19CR297 |
| v. | : |
| | : (Conspiracy to Commit Health Care |
| TIMOTHY HAMILTON, | : Fraud, 18 U.S.C. § 1349; Prohibited |
| | : Conflicts of Interest, 18 U.S.C. § 208; |
| Defendant. | : Forfeiture, 18 U.S.C. § 981(a)(1)(C); |
| | : 21 U.S.C. § 853; 28 U.S.C. § 2461(c)) |

...oOo...

## INFORMATION

### COUNT ONE – CONSPIRACY TO COMMIT HEALTH CARE FRAUD

The United States Attorney for the District of Maryland charges:

### INTRODUCTION

At times material to this Information:

1. Defendant **TIMOTHY HAMILTON** ("**HAMILTON**") was a resident of Columbia, Maryland.

2. **HAMILTON** was an employee of Walter Reed National Medical Center ("Walter Reed"), which was the largest joint military medical center in the United States.

3. Walter Reed was located in Bethesda, Maryland. Prior to 2011, Walter Reed was located in the District of Columbia.

4. Walter Reed was part of the Department of Defense, which was part of the executive branch of the United States Government.

1

5. Walter Reed provided orthotic and prosthetic services to U.S. service members and their dependents, including wounded warriors.

6. Medicare, Medicaid, Tricare, Blue Cross Blue Shield, the Federal Employee Health Benefit Plan, and Aetna were health care benefit programs, as defined in Title 18, United States Code, Section 24(b), and provided medical insurance for individuals in Maryland.

7. The Board of Certification/Accreditation ("BOC") was an independent, not-for-profit organization.

8. The BOC's mission was to support quality patient care by offering credentials for professionals and accreditation for businesses nationwide. BOC was recognized by Medicare and other payors as meeting national standards.

9. The BOC and Medicare requested information from medical providers and/or companies seeking certification and accreditation, including information about the location, hours of operation, ownership, and credentialing of companies, and experience and training for individuals providing treatment. BOC also performed on-site visits for business accreditation.

10. Person A lived in Montgomery County, Maryland, and operated Company A, which was located in Bethesda, Maryland.

11. Hamilton was a certified Orthotist and Person A was a certified Orthotic Fitter.

## THE CONSPIRACY AND ITS OBJECTS

12. From in or about 2009, and continuing until in or about October 2015, in the District of Maryland and elsewhere,

**TIMOTHY HAMILTON,**

2

the defendant herein, did knowingly and willfully combine, conspire, confederate and agree with Person A, and other persons known and unknown to the Grand Jury, to commit certain offenses against the United States, namely, to knowingly and with the intent to defraud, obtain money and property owned by and under the custody and control of Medicare, Medicaid, Tricare, Blue Cross Blue Shield, the Federal Employee Health Benefit Plan, Aetna, and other health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

## METHODS AND MEANS

13. It was part of the conspiracy that Person A suggested to **HAMILTON** that Person A could arrange to pay **HAMILTON** and use **HAMILTON's** credentials to increase the scope of services Company A could provide.

14. It was further part of the conspiracy that **HAMILTON** provided his Orthotist certificate to Person A.

15. It was further part of the conspiracy that Person A and Company A used **HAMILTON's** certification in submissions made to BOC and Medicare, and posted **HAMILTON's** certification in the offices of Company A.

16. It was further part of the conspiracy that Company A paid more than $40,000 to **HAMILTON** during the time period 2009 to October 2015.

17. It was part of the conspiracy that Company A provided patients with orthotic services involving custom fabrication.

18. It was part of the conspiracy that Company A sought insurance payments for services involving custom fabrication when neither **HAMILTON** nor any other individual qualified to provide custom fabrication was involved in Company A's custom fabrication.

19. It was further part of the conspiracy that Medicare and other insurance providers would not have provided insurance payments for custom fabrication absent Company A's false representation that **HAMILTON** or another qualified person was involved in providing such services.

20. It was further part of the conspiracy that Company A obtained more than $150,000 in payments from health care benefit programs for orthotic custom fabrication services during the time period in or about January 2009 to in or about January 2015.

18 U.S.C. § 1349.

## COUNT TWO – CONFLICT OF INTEREST

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1-5, and 10 and 11 of Count One of this Information are hereby incorporated by reference as though fully set forth herein.

2. **HAMILTON**'s duties at Walter Reed included providing Orthotist services, ordering products for patients, and supervising other providers working in orthotics at Walter Reed.

Person A and Company A

3. From in or about 2009 until in or about 2015, **HAMILTON** repeatedly placed orders for products with Company A.

4. From in or about 2009 until in or about 2015, Walter Reed purchased more than $5 million worth of medical and orthotic supplies from Company A.

5. From in or about 2009 until in or about October 2015, **HAMILTON** received more than $40,000 from Company A. The payments varied in amount and included payments purportedly for parking reimbursement and bonuses.

6. **HAMILTON** did not disclose his financial relationship with Company A to Walter Reed.

Person B and Company B

7. Person B lived in Montgomery County, Maryland and operated and controlled Company B, which was based in Montgomery County, Maryland.

8. From in or about 2012 to in or about 2015, **HAMILTON** repeatedly placed orders on behalf of Walter Reed with Company B.

5

9. From in or about 2012 to in or about 2015, Walter Reed purchased more than $10 million of medical and orthotic supplies from Company B.

10. From in or about 2012 to in or about 2015, **HAMILTON** received airplane tickets, hotel lodging, and other financial benefits from Company B and Person B.

11. From in or about 2009, and continuing until in or about October 2015, in the District of Maryland, and elsewhere, the defendant,

**TIMOTHY HAMILTON,**

being an officer and employee of the executive branch of the United States Government, did participate personally and substantially as a Government employee and officer through decision, approval, disapproval, recommendation, the rendering of advice, investigation and otherwise, in particular matters in which, to **HAMILTON's** knowledge, (i) he had a financial interest; (ii) Company A had a financial interest; and (iii) Company B had a financial interest, to wit, the defendant, in his official capacity as a Walter Reed employee, placed multiple orders for products from Company A and Company B while at the same time receiving compensation from Company A as a purported employee, and tickets, hotel lodging, and other financial benefits from Company B and Person B.

18 U.S.C. § 208, 216(a)(1)
18 U.S.C. § 2

## FORFEITURE

1.  Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1349 and 208, as set forth in Counts One and Two of this Information, the defendant,

**TIMOTHY HAMILTON,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, including but not limited to a sum of money equal to the value of the proceeds of the offenses.

## SUBSTITUTE ASSETS

2.  If, as a result of any act or omission of the defendant, any such property subject to forfeiture,

    (a) cannot be located upon the exercise of diligence;

    (b) has been transferred, or sold to, or deposited with a third person;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

18 U.S.C. § 981
21 U.S.C. § 853
28 U.S.C. § 2461

Date: _____    Robert K. Hur /JB
Robert K. Hur
United States Attorney